# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01370-COA

**DONALD KEVIN GOFF**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2018 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | DONALD KEVIN GOFF (PRO SE) |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| | LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     On June 15, 2017, a Forrest County grand jury indicted Donald Kevin Goff for one count of aggravated domestic violence in violation of Mississippi Annotated Code section 97-3-7(4)(a) (Rev. 2014) and one count of tampering with a witness in violation of Mississippi Annotated Code section 97-9-115 (Rev. 2014). Following a jury trial held on June 19, 2018, Goff was found guilty on both counts. On June 29, 2018, the court sentenced Goff, as a habitual offender, to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). The court's final order confirming the verdict and

sentence was entered on July 2, 2018. On July 27, 2018, Goff filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the trial court denied. Aggrieved, Goff now appeals his conviction. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. On October 19, 2016, Joanna Pickering and Donald K. Goff were involved in an altercation that occurred while Pickering operated the vehicle transporting the soon to be divorced couple. During the incident, the car crossed four traffic lanes, went into a ditch, and finally stopped in a dollar store parking lot. Pickering testified that the argument started when Goff attempted to light a cigarette she believed to contain the drug spice. A former drug addict, Pickering was enrolled in a sobriety program while Goff purportedly continued using the drug. Pickering testified their argument began over Goff's drug use and escalated when Goff bit her. Pickering further testified that Goff went on to pull her ponytail before beginning to choke her and bang her head on the steering wheel, all while she was driving. Pickering stated that she believed she was about to die.

¶3. A nearby observer, Chester Clay, noticed the struggle and called 911 after Pickering's vehicle stopped in front of his car. Clay reportedly noticed the car driving erratically and saw "a guy like choking his wife or something." Clay testified that he witnessed Pickering driving with Goff's hand around her throat. Clay also claims he saw Goff screaming at Pickering while throwing her head around and slamming her back and forth; he described the situation as "pretty violent." After the car stopped, Clay approached the passenger side of Pickering's vehicle and began hitting Goff, who would not release Pickering. With the assistance of

2

another unidentified onlooker, Clay beat Goff until he was rendered unconscious.

¶4.    Deputy Sherman Heathcock of Forrest County Sheriff's Department responded to the scene and testified that Goff was badly injured, describing him as bloody, "very incoherent" and still sitting in the passenger side of the vehicle.  In addition to Goff's injuries, Heathcock also noted those of Pickering, who had escaped from the vehicle and was found sitting on the curb.  Pickering had sustained several injuries from the incident, including a bite mark on her arms, marks around her neck, knots on her forehead, and a black eye, all consistent with her account.  When questioned by Heathcock, Pickering identified Goff as her husband and the party responsible for her injuries.  Heathcock photographed Pickering's injuries, noting "several marks about the head and neck."

¶5.    On October 20, 2016, Investigator Alyssa Chandlee of the Forrest County Sheriff's Office interviewed Pickering and photographed her injuries.  Chandlee secured a warrant to arrest Goff for aggravated assault and monitored phone calls he made to Pickering from jail between October 31, 2016, and November 2, 2016.  Pickering testified that Goff called her from jail on multiple occasions attempting to dissuade her from testifying as a State's witness and urged her not to share "their business" with police.  Based on the calls, Chandlee added the charge of tampering with a witness.  The recordings of Goff's calls were later used as evidence at trial.

¶6.    On June 15, 2017, Goff was arrested and indicted on two counts by a Forrest County grand jury: aggravated assault and tampering with a witness.  On the motion of the State, the indictment was amended to charge Goff as a habitual offender pursuant to Mississippi Code

3

Annotated section 99-19-83 (Rev. 2015). An order granting the State's motion was entered on June 19, 2018; Goff's jury trial began the same day.

¶7. At Goff's trial, both Officer Heathcock and Investigator Chandlee testified as State witnesses. During the conclusion of the proceedings, Heathcock and Chandlee assumed the position of bailiff due to a personnel shortage. The officers did not interact or communicate with the jury members. The court also noted that the officers were not present in the jury room during deliberations.

¶8. On June 20, 2018, the jury returned a guilty verdict on both counts as charged in the indictment. Goff was sentenced, as a habitual offender, to life imprisonment in the custody of the MDOC. On July 27, 2018, Goff filed a post-trial motion for JNOV or, in the alternative, a new trial; the court denied the motion in an order entered on August 22, 2018. On appeal, Goff's appointed counsel argues that he was denied his fundamental right to a trial by an impartial jury. Pro se, Goff raises additional issues in a supplemental brief filed on January 30, 2020. Rephrased for clarity, Goff alleges that (1) his indictment was defective, (2) the trial court judge exhibited bias and misconduct, (3) the prosecution engaged in misconduct; and (4) his defense counsel had a conflict of interest and provided ineffective assistance. Goff argues that these errors resulted in a violation of his due process rights.

**DISCUSSION**

¶9. Goff argues that his fundamental right to a fair trial by an impartial jury was violated when the State's witnesses, Deputy Sherman Heathcock and Investigator Alyssa Chandlee, acted as bailiffs during closing arguments and jury deliberations.

4

¶10. The State contends that Deputy Heathcock and Investigator Chandlee only served as bailiffs briefly and did not have any interaction with the jury. The State further cites the failure of trial counsel to raise an objection or request a mistrial at Goff's trial. Goff's post-trial motion for a JNOV or, in the alternative, a new trial, did not raise the issue either.

## I. Procedural Bar

¶11. The following colloquy between Goff's trial attorneys, Mr. Ignatiev and Ms. Slawson, and the court reveals that Goff's attorneys noted the guard change with the court but later opined that no prejudice resulted. No objection was raised to properly preserve this issue for appeal.

> Ignatiev: Your Honor, I'd just like to note that at some time – I'm not sure when because it was during closing, I would assume – at some point we had a switch in bailiffs. The bailiff who was present departed for whatever reason and Sherman Heathcock, who was a witness in this case, temporarily replaced him, I guess. I mean, he was standing in the back of the courtroom and along with Alyssa Chandlee. They were both witnesses in this case and I don't think that was – I don't – there's no evidence it was prejudicial or anything, but I do want to note for the record–
>
> The Court: All right.
>
> Ignatiev: – they should not have been there.
>
> The Court: All right. Well, here's what I observed. I didn't know Alyssa Chandlee was back there. I didn't know Sherman Heathcock was back there. When I sent the – I heard a noise I thought was coming from the jury room. And obviously I'm not going to send a jury back there with people who aren't on the jury there. So I went in the jury room. There was nobody in the jury room. And when I came back out I noted that the muted conversations were back behind the wall. And there stood Sherman Heathcock, who was a witness, and there stood Alyssa Chandlee, who was a witness. Behind the wall the only opening

5

between that wall and the courtroom is a door. And the door is open. And that's how I saw them when I came back. So I had a brief discussion with him. Told me that the bailiff who was here was shorthanded. He was an older gentleman. He took his place. I asked the jury to go in the jury room. Then Sherman closed the door. As I'm looking there, I don't see any juror that's looking at him. I can't – of course, I'm not a – I'm just telling you, as the judge, I didn't see anybody look at that or notice that. And once it was brought – frankly, I didn't think about it. Frankly, when it was brought to my attention, I – of course the door was shut then. I get him in the back. Well he's standing here then. But there's no other deputy here. And I made the statement on the record that I would take the jury instructions back to the door and I would hand the exhibits over. That's what happened. There's been no contact, no conversations, no nothing between either Sherman Heathcock or Alyssa Chandlee.

So, I mean, you've made the record, but I'm saying on the record based on my complete observations, which I've tried to dictate into the record, I saw no interaction with – between Deputy Heathcock and the jury except as they were going in with their backs turned to the courtroom, he shut [the] door. And that's it. So I believe that completes the record.

Ignatiev: Thank you, Your Honor.

The Court: All right.

Slawson: Your Honor, from my perspective from the counsel table, when the jurors were finally in to the jury room, Deputy Heathcock was standing in the usual position the bailiff would be standing in.

The Court: All right. Well, I didn't see that, so we'll supplement the record with her observations.

Ignatiev: Thank you, Your Honor.

¶12. Although Goff's attorney acknowledged some possible basis for objection, no clear objection, specific or otherwise, was asserted nor was any remedy requested. It is well

6

settled that in instances where the appellant failed to raise a timely objection before the trial court, the issue is waived on appeal. *Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012). *See also Terrell v. State*, 237 So. 3d 717, 731 (¶55) (Miss. 2018) ("An established principle of appellate review is that issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal.").

## II. Plain Error

¶13. "The defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." *Stokes v. State*, 141 So. 3d 421, 428 (¶26) (Miss. 2013) (quoting *Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1994)). However, "while this exception exists, it 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

¶14. Goff submits that his fundamental rights were violated by the change of guard and seeks reversal under the plain error doctrine. In addition to the officers, the jury was presented with testimony from the victim, Pickering, and an eye-witness, Clay, as evidence of the assault. Recordings of the phone calls between Goff and Pickering were also submitted as evidence of the witness tampering charge. Contrary to Goff's current assertion, his trial counsel stated that "there [was] no evidence it was prejudicial or anything" and after a review of the record, we find no basis for reversal under this standard. Thus, we decline to reach the merits of Goff's claim.

## III. Pro Se Supplemental Brief

¶15. We have reviewed and will briefly address Goff's supplemental claims; however, we find them to be without merit. Goff presents no evidence sufficient to substantiate his claims or to suggest a violation of his due process rights.

### *A.  Goff's Indictment*

¶16. Goff complains that his indictment was defective for several reasons. However, a plain reading of Goff's indictment dispels each of his claims.

¶17. First, he argues that Count I (aggravated assault) charged him under the incorrect statute, Mississippi Code Annotated section 97-3-7(3). This assertion is simply not true. In its heading, Goff's indictment clearly reflects "Count I-Aggravated Domestic Violence, (Strangulation) Section 97-3-7(4)(a)" as the offense charged. Section 97-3-7(3) is mentioned only once to define "a domestic relationship," not strangulation, as Goff suggests in his brief. On this point, Goff is mistaken, and this issue is without merit.

¶18. Next, Goff argues that the "specific nature of the offense [he] was to have done to constitute a strangle are missing." Contrary to his assertion, Goff's indictment states that Goff did "strangle or attempt to strangle Easter Joanna Goff, *by placing his hands, arms or an object around the neck of Easter Joanna Goff . . . .*" (Emphasis added). This clearly reflects the nature of the strangulation offense for which Goff was charged and indicted. Again, Goff's claim is not supported by the record and fails.

¶19. Goff also claims that Count II of his indictment failed to list "a statute for prosecution" or a description of the alleged crime, witness tampering. Below Count I, Goff's indictment also lists "Count II-Tampering with a Witness, Section 97-9-115" in its heading.

8

Further, the substance of the indictment tracks the language of the statute and indicates that Goff did "attempt to induce Easter Joanna Goff, a witness or a person the Defendant believes will be called as a witness in any official proceeding, to testify falsely or to unlawfully withhold testimony, contrary to the form of the statute . . . ." Section 97-9-115 provides that "[a] person commits the crime of tampering with a witness if he . . . [i]ntentionally or knowingly attempts to induce a witness or a person he reasonably believes will be called as a witness in any official proceeding to . . . [t]estify falsely or unlawfully withhold testimony . . . ." Accordingly, we find this claim to be without merit. Goff's indictment was not defective.

### B.   Judicial Bias and Misconduct

¶20.   For the first time on appeal, Goff alleges that Judge Weathers abused his authority and exhibited bias against him; Goff argues that recusal was appropriate in this instance. Goff cites *In re Murchison*, 349 U.S. 133 (1955), as the sole support for his argument that the trial judge violated his due process rights by acting in a "dual role" and advising Goff's trial counsel. Goff also claims that the trial judge abused his discretion with regard to evidence at trial, "extracted" portions from his indictment, and made inappropriate comments regarding his guilty plea and at his sentencing hearing. But as mentioned, Goff raised no issues with the judge at any point during trial and no motion to recuse was filed. Therefore, this issue is waived. "This Court and the supreme court have indicated many times that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue filed or if the defendant never raises the issue at any other point during the trial."

9

*Day v. State*, 285 So. 3d 171, 179 (¶19) (Miss. Ct. App. 2019) (citing *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994)). Further Goff's claim is unsupported by authorities, statutes, or evidence and we find them to be without merit.

### C.    *Goff's Remaining Assertions of Error*

¶21.   "A trial court's judgment is presumptively correct[,] and the appellant must demonstrate reversible error to this Court." *Hall v. State*, 295 So. 3d 544, 554 (¶21) (Miss. Ct. App. 2019) (quoting *Lenard v. State*, 812 So. 2d 1097, 1102 (¶18) (Miss. Ct. App. 2001)). When challenging the trial court's judgments on appeal, the appellant's burden is to support his "contentions with citations to authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). The remaining issues raised in Goff's supplemental brief are comprised of Goff's opinions and personal account of the incidents complained of. "This Court . . . [is] under no obligation to consider assignments of error when no authority is cited." *Perkins v. State*, 863 So. 2d 47, 56 (¶35) (Miss. 2003) (quoting *Kelly v. State*, 553 So. 2d 517, 521 (Miss. 1989)). Absent the support of any "authorities, case law, or statutes" to substantiate Goff's claims, we decline further review of the remaining alleged errors.

¶22.   For the foregoing reasons, we affirm Goff's convictions for aggravated domestic assault and tampering with a witness.

¶23.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**